Stuart H. Low and Edward V. Low, copartners, trading as Hugh Low & Co., *v.* Robert Craig, Appellant.

*Measure of damage—Loss of profit—Sale of particular chattels.*

Ordinarily loss of profit is not damage for which recovery can be had and the rule—that when the purchaser of an article, which cannot be obtained in the general market sells to a third party at a profit, the profit is the measure of damages between the original buyer and seller on a failure to deliver—cannot be applied when the goods are obtainable in the market and have some market value at the place of delivery.

Argued Oct. 4, 1898. Appeal, No. 3, Oct. T., 1898, by defendant, from judgment of C. P. No. 1, Phila. Co., March T., 1896, No. 35, on verdict for plaintiff. Before RICE, P. J., ORLADY, SMITH, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Assumpsit. Before BRÉGY, J.

The facts sufficiently appear from the charge of the court, which is as follows :

Gentlemen of the jury: I will try to simplify this matter for you if I can. According to the books of this English firm that sold the plants, there was $2,575.60 due them by the defendant. Now, let one of you jurors take a piece of paper and a pencil for the benefit of all of you—it will help you toward the end. The claim toward the end was $2,575.60, and on that there has been paid $1,815.31, which leaves $750.29, and, if there was nothing more done, there would be a balance due of $755.29 ; but the defendant says, " I have a defense to that or part of that," and the first thing he presents you is the claim of $195.50. Put that after the $755.29—that is the price charged for the latanias. He says "I ought not to pay that, or that ought to be deducted from the $755.29, because the latanias were not what I bought—those they sent me were worthless." Now, about that, the law is just this: That if a man buys a thing, and the seller sends him something else, it is the duty of the man to refuse it and to send it back, or to send for the seller to take it away; or he can do the other thing if he chooses—he can keep

it—in which event he must pay the price of it—not what he agreed to pay for something else, but what that article is really worth. So far as the latanias were concerned, Mr. Craig and his witnesses say those things were not worth anything, as he had to pay the duty before he could get to see them, and that the value of those in the market was not any more than what he paid in duty and freight. If you find those are the facts, you should allow him the $195.50 and deduct it from there. If you find he got just what he bought, and got sick of his bargain afterwards, then he must pay what he agreed to pay—the price he agreed upon when he bought them. The next thing is $175 claimed for the araucarias. The defendant says practically the same thing about that. The law is just the same. If you believe they sent him worthless stuff, out of which he could not get any more money than the duty and freight cost him, you should deduct that. If, on the other hand, you believe they sent him just what he bought, then, of course, he ought to pay for it. The next claim is $76.66, which you can put down for dead and worthless plants. He says he is entitled to a deduction for that on the two bills, because when these shipments were received there were $76.66 worth of dead plants—dead and worthless plants—among them. Is he entitled to any credit for that? What is the law? When a man goes and buys a thing, it becomes his at the store; and ordinarily, if they are handed to a railroad or steamship company, and are injured by the railroad or steamship company, they are responsible—the carrier is responsible, and not the seller. But if, as some of the witnesses have testified here, this damage or injury was caused by reason of the things being improperly packed—in other words, if it was the fault of the plaintiff, Low & Co., that these goods were damaged—this $76.66 should be deducted, otherwise it should not. Now, there is a claim in this $2,570.60, originally made, of $36.06 for costs expended in the employment of some mercantile agency. That, I charge you, should be deducted—that comes off. In addition to that there is an item of $26.66 for protested drafts—that must come off. [This would leave, if you allowed all the claims, the sum of $265.41 still due the plaintiff for plants. To offset that, the defendant says: "We lost the profit on these plants; we lost a profit of $250, which we would have had if we had sold these plants." I think

I will charge you that, under the evidence here, that $250 cannot be allowed.    That would leave, if you allowed everything, $265.41; and, if there is anything you have concluded not to allow, it should be added to the $265.41.   If you disallowed them all there would be $729, less the cost of the drafts.] [1]

Verdict and judgment for plaintiff for $674.06.   Defendant appealed.

*Errors assigned* were (1) to portions of the judge's charge, reciting same.   (2) In not charging the jury that the set-off claimed should be allowed.

*John F. Gorman* and *William Gorman*, for appellant.—The learned judge charged as a matter of law that the jury should not allow the question of the set-off of profits lost, claimed by defendant.   A leading English case on this point, and one similar to the case at bar, is that of France v. Gaudet, L. R. 6 Q. B. 199.   See also Borries v. Hutchinson, 18 C. B. N. S. 445.

The American cases are to the same point: Lentz v. Choteau, 42 Pa. 435; Coal Co. v. Coal Co., 138 Pa. 45; Culin v. Glass Works, 108 Pa. 220; Booth v. Rolling Mill Co., 60 N. Y. 487; Trigg v. Clay, 88 Va. 330; Van Arsdale v. Rundel, 82 Ill. 63.

*H. B. Gill*, with him *Silas W. Pettit* and *John R. Read*, for appellee.—The only complaint made by defendant is that the court below instructed the jury that they could not, under the testimony in the case, allow the defendant the sum of $250, which he claims would be the profit which he would have made upon the sale of the plants.

The rule laid down by the court was the correct measure of damage beyond all question.   Where the article has not been returned the measure of damage ordinarily is the difference between the value of the article delivered and the value of the article agreed to be delivered: Seigworth v. Leffel, 76 Pa. 476; Himes v. Kiehl, 154 Pa. 190; Joseph v. Richards, 2 Pa. Superior Ct. 208.

OPINION BY W. W. PORTER, J., November 14, 1898:

The defendants bought from the plaintiffs in England certain plants of particular species, quality and condition.   They were

selected by the defendants themselves and the price agreed upon. The defendants claim that, pending the arrival of the plants in America, they sold a quantity of them to third parties at a considerable profit; that when the plants arrived they were not those selected but worthless plants; and that the purchaser refused to take them whereby the defendants lost their profit. They now seek to defalk this profit. The court below instructed the jury that the alleged profit was not a proper set-off. This alone is assigned for error.

Ordinarily, loss of profit is not damage for which recovery can be had, but the appellant here invokes the rule that when a purchaser of an article, which cannot be obtained in the general market, sells to a third party at a profit, the profit is the measure of damage between the original buyer and seller on a failure to deliver. This rule cannot be applied, when the goods are shown by testimony to be obtainable in the market, and to have some market value at the place of delivery, or where the terms of the contract of resale are not disclosed with completeness. Both of these objections to the application of the rule appear to exist in the present case as shown by the abstract of testimony with which we have been furnished, and lead us to affirm the ruling of the trial judge in excluding the alleged loss of profit from the consideration of the jury.

Judgment affirmed.